UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GARY L. VARNAM, | ) |
| | ) No. CV-06-3010-CI |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment, noted for hearing without oral argument on January 8, 2007. (Ct. Rec. 15, 17). Plaintiff Gary L. Varnam ("Plaintiff") filed a reply on December 29, 2006. (Ct. Rec. 19). Attorney Thomas Bothwell represents Plaintiff; Special Assistant United States Attorney David M. Blume represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a

[1]As of February 12, 2007, Michael J. Astrue succeeded Commissioner Linda S. McMahon as acting Commissioner of Social Security. Pursuant to ED. R. CIV. P. 25(d)(1), Commissioner Michael J. Astrue should be substituted as Defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

magistrate judge. (Ct. Rec. 2). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 17) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 15).

### JURISDICTION

On July 23, 2003, Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"), alleging disability since June 30, 2003, due to post-traumatic stress disorder ("PTSD"). (Tr. 52, 53, 65.)  The application was denied initially and on reconsideration.  (Tr. 30-32, 35-36.)

On July 22, 2004, Plaintiff appeared and testified before Administrative Law Judge ("ALJ") Verrell Dethloff. (Tr. 355-372.) On January 26, 2005, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 15-27.) The Appeals Council denied a request for review on December 5, 2005. (Tr. 7-9.) Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). On February 3, 2006, Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Ct. Rec. 1.)

### STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 55 years old on the date of the decision and has a ninth grade education. He served in Vietnam as a Marine from April 16, 1969, to October 14, 1970. (Tr. 19, 71, 53.)

Plaintiff worked delivering newspapers for the Yakima Herald from 1994 through June of 2003, delivering newspapers for the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

Ellensburg Daily Record from 2000 to 2003, and ran his own lawn care business from December of 1993 until December of 2000. (Tr. 66, 71, 296, 361-362.)  At the administrative hearing held on July 22, 2004, Plaintiff testified that he last worked on June 30, 2003, delivering newspapers.  (Tr. 360, 367.)  Plaintiff stopped because he "got tired of doing it, and things were bothering me, and, and I was getting irritated more and more about things and stuff, so I just quit." (Tr. 360.)

Plaintiff testified that he lives with his spouse in a house on five acres. (Tr. 362-363.) He watches television, reads, works on his four cars, and occasionally drives his spouse to Ellensburg to shop or pay bills. (Tr. 363, 366.) The work on Plaintiff's cars consists of changing the oil, performing tune ups, and changing tires. (Tr. 366.) Plaintiff testified that his prescription medication seems to help keep him calmer, and eventually he will go into counseling. (Tr. 363-365.) At times Plaintiff is tired, run down, and doesn't feel like getting up and doing anything. (Tr. 367.)

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.    42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).    Thus, the definition of disability consists of both medical and vocational components.    *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.    20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1.    If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past.    If Plaintiff is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step,

Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

(*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

At the outset the ALJ found that Plaintiff meets the nondisability requirements of Section 216(I) of the Social Security Act and is insured for DIB through the date of the decision. (Tr. 19.)  The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, June 30, 2003. (Tr. 19.)  At steps two and three, the ALJ determined that Plaintiff suffers from the severe impairment of post-traumatic stress disorder (PTSD), but the impairment does not meet or medically equal one of the Listings impairments. (Tr. 19, 21-22.) The ALJ found that Plaintiff's sleep apnea is controlled with medication and is therefore non-severe. (Tr. 24.)  At step three, the ALJ found that Plaintiff has the residual functional capacity to perform work at all exertion levels, with the following limitations: (1) because he is moderately limited in the ability to work in coordination with or proximity to others without being distracted by them, Plaintiff should have limited contact with the general public and coworkers; and (2) Plaintiff should avoid concentrated exposures to hazards such as machinery or heights.  (Tr. 23, 27.)  At step four of the sequential evaluation process, the ALJ found that with this RFC, Plaintiff is able to perform his past relevant work delivering newspapers. (Tr. 27.) Because the ALJ determined at step four of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act, he was not required to proceed to step five. (Tr. 27.)

**ISSUE**

Plaintiff raises a single issue: the Commissioner erred as a matter of law by failing to properly credit the VA's disability

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1  determination. (Ct. Rec. 15-2 at 1, 14-18.) The Commissioner

2  responds that the ALJ properly weighed the medical evidence. (Ct.

3  Rec. 18 at 6-11.)

4      This court must uphold the Commissioner's determination that

5  Plaintiff is not disabled if the Commissioner applied the proper

6  legal standards and there is substantial evidence in the record as

7  a whole to support the decision.

8                              **DISCUSSION**

9      In social security proceedings, the claimant must prove the

10 existence of a physical or mental impairment by providing medical

11 evidence consisting of signs, symptoms, and laboratory findings; the

12 claimant's own statement of symptoms alone will not suffice. 20

13 C.F.R. § 416.908. The effects of all symptoms must be evaluated on

14 the basis of a medically determinable impairment which can be shown

15 to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical

16 evidence of an underlying impairment has been shown, medical

17 findings are not required to support the alleged severity of

18 symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

19     A treating or examining physician's opinion is given more

20 weight than that of a non-examining physician. *Benecke v. Barnhart*,

21 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining

22 physician's opinions are not contradicted, they can be rejected only

23 with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821,

24 830 (9th Cir. 1996). If contradicted, the ALJ may reject an opinion

25 if he states specific, legitimate reasons that are supported by

26 substantial evidence. *See Flaten v. Secretary of Health and Human

27 Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995). In addition to medical

28 reports in the record, the analysis and opinion of an non-examining

medical expert selected by an ALJ may be helpful to the adjudication. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.*

Plaintiff contends that the ALJ erred by failing to properly consider the VA's determination that Plaintiff was 70% disabled beginning in January of 2003 and 100% disabled beginning in July of 2004. (Ct. Rec. 15-2 at 1, 14-18.)  The Commissioner responds that, while the ALJ must ordinarily give great weight to the VA's rating, the VA and SSA criteria are not identical, and the ALJ may, as he did in this case, give less weight to the VA rating if he gives persuasive, specific and valid reasons that are supported by the record. (Ct. Rec. 18 at 7), *citing McCartey v. Massanari*, 298 F. 3d 1072, 1076 (9th Cir. 2002).

The ALJ is not required to give great weight to a VA rating if the decision adequately explains the valid reasons for not doing so. *Id.* In this case the ALJ observed that both the VA's 70% and 100% disability determinations were apparently based on reports by Philip Plattner, M.D.  (Tr. 24.)  The ALJ gave the VA assessment little weight because: (1) Dr. Plattner's notes do not support complete disability; (2) there is no indication that Dr. Plattner has an ongoing treatment relationship with Plaintiff; (3) Dr. Plattner's analysis is "shallow"; (3)"unemployability" is not the standard for the Social Security Administration; (4) even while classified as significantly vocationally limited by the VA, the Plaintiff was earning substantial gainful activity, and (5) Dr. Plattner's notes from March 19, 2003 (Tr. 301-306) do not really differ from his more

thorough July 19, 1999, exam (Tr. 249-255) where he assessed a GAF of 55 to 60. (Tr. 24.)

Dr. Plattner first examined Plaintiff on July 19, 1999. (Tr. 249-255.) He noted that Plaintiff's VA file contained a prior psychiatric evaluation by C. Richard Johnson, M.D., from June 25, 1986. (Tr. 249.) Dr. Johnson had noted that Plaintiff was having difficulty remembering things and reported that he occasionally gets "touchy." (Tr. 249.) Dr. Johnson found "no psychiatric disease or disorder." (Tr. 249.)

At the 1999 exam, Plaintiff told Dr. Plattner about some of his combat experiences in Vietnam. He said that "once in a while" he had disturbing memories of the experience. (Tr. 249-251.) Plaintiff has "cold sweats" from 15 to 20 nights a month, and has had these for many years. (Tr. 251.) He dislikes large groups of people. (Tr. 251.) Plaintiff described feelings of estrangement and detachment from others, a "long standing difficulty with sleep disturbance," and being startled by sudden loud noises. Plaintiff told Dr. Plattner that he has problems with anger and irritability. (Tr. 251.) Dr. Plattner observed that Plaintiff "shows a restriction to his range of affect," and "has significant problems in concentrating and focusing on the task at hand within the psychiatric evaluation." (Tr. 251.) Plaintiff told Dr. Plattner that he worked delivering newspapers, mowing lawns and performing odd jobs such as removing snow and making minor plumbing repairs, and his net income from this work was $8,000 to $11,000 a year. (Tr. 252-253.) Dr. Plattner observed that Plaintiff "has a very significant numbing of his general responsiveness that is evident within the psychiatric evaluation." (Tr. 254.) He opined that Plaintiff met the full

criteria for PTSD; he diagnosed PTSD, chronic, of at least moderate
severity, and assessed a current GAF of 55 to 60. (Tr. 253-254.)
This assessment from 1999 predates Plaintiff's June 2003 onset date
by about four years.

Dr. Plattner's next evaluation took place on March 19, 2003,
eight months after the alleged onset date. (Tr. 301.) Dr. Plattner
noted that Plaintiff was seeking an increase in his service-
connected disability for PTSD "as he indicates that his condition
has worsened." (Tr. 301.) Plaintiff described having more
difficulty with anger and irritability and significant agitation
caused by sudden loud noises. (Tr. 302.) Plaintiff's spouse
indicated that "he is neglecting his personal appearance and
hygiene," and he began seeing a counselor only last week. (Tr.
302.) Plaintiff told Dr. Plattner that he stopped his yard work
business one and a half to two years earlier because he was getting
too angry and irritable; he also quit one of his paper delivery
routes but was still delivering two routes at the time of the exam.
(Tr. 302.) Plaintiff described ongoing frequent disturbing memories
about his military service, some of them triggered by planes and
helicopters flying overhead. (Tr. 302.) He told Dr. Plattner that
he does not have nightmares but experiences night sweats two to
three times a week. (Tr. 303.) Dr. Plattner assessed PTSD, chronic
and severe; dysthymia secondary to PTSD, chronic and at least
moderately severe, possibly of greater severity, and noted that
Plaintiff recently began antidepressant medication. (Tr. 305.) Dr.
Plattner opined that Plaintiff's occupational impairment is severe.
In reaching this conclusion, Dr. Plattner noted that Plaintiff gave
up his yard work business and reported earning only $4,000 the

previous year. (Tr. 305.) With respect to employability, Dr. Plattner opined: "It is not thought that the veteran would be able to gain or sustain competitive full time employment. He can only work part time, in relative isolation and detachment from others, which he does with his paper route." Dr. Plattner assessed a GAF of 50. (Tr. 305-306.)

Jay Toews, Ed.D., examined Plaintiff on October 1, 2003, four months after the alleged onset date and seven months after Dr. Plattner's last exam. (Tr. 175-178.) Plaintiff was not in counseling. (Tr. 175.) He took Prozac for two years, and reported that it helped him sleep better and feel much less agitated. (Tr. 175.) Plaintiff told Dr. Toews that he performs routine maintenance and repairs on his house, his vehicles, and on small engines. He has a few friends that he sees on a regular basis. Plaintiff gets up at 8:00 a.m., goes to bed between 1:00 and 4:00 a.m., and sleeps four hours a night. (Tr. 176.) Dr. Toews felt that "this seems quite improbable." (Tr. 176.) Dr. Toews found no indication of cognitive deficits and no problems with attention or concentration. (Tr. 177.) Plaintiff was able to comprehend detailed instructions and his memory was intact. He reported no history of antisocial behavior. (Tr. 177.) Dr. Toews observed that Plaintiff's mood was neutral and his affect mildly constricted. (Tr. 177.) Dr. Toews opined:

> This gentleman is uncharacteristically vague referencing his symptoms and problems. He appears to be poorly motivated and to have had little work motivation. His overall demeanor was not congruent with either depression or anxiety. References to intrusions were unconvincing. If indeed this gentleman has PTSD, it is extremely mild and does not appear to interfere in any significant way.

(Tr. 177.) Dr. Toews diagnosed "PTSD by history, vague symptomology,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

and learning disorder, NOS by history, and rule out borderline
intellectual functioning." He assessed a GAF of 65-70. (Tr. 178.)

The ALJ considered credibility when he weighed the medical
evidence, and determined that Plaintiff was not entirely credible.
(Tr. 22.) Plaintiff does not challenge this finding. When a
claimant does not seriously challenge the ALJ's credibility
determination, medical opinions based primarily on plaintiff's
subjective complaints are entitled to less weight. *Tonapetyan v.
Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion
may be disregarded when it is premised on the properly rejected
subjective complaints of plaintiff).

It is the province of the ALJ to make credibility
determinations. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.
1995). However, the ALJ's findings must be supported by specific
cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.
1990). Once the claimant produces medical evidence of an underlying
impairment, the ALJ may not discredit the testimony as to the
severity of an impairment because it is unsupported by medical
evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).
Absent affirmative evidence of malingering, the ALJ's reasons for
rejecting the claimant's testimony must be "clear and convincing."
*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General
findings are insufficient: rather the ALJ must identify what
testimony is not credible and what evidence undermines the
claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*,
12 F.3d 915, 918 (9th Cir. 1993).

The ALJ found Plaintiff less than fully credible for at least
three reasons: (1) Plaintiff worked for years (from at least 1999 to

June of 2003) with the same symptoms as those he described at the hearing; therefore, the symptoms cannot be disabling, as Plaintiff alleges; (2) Plaintiff's alleged worsening of psychological symptoms is not corroborated by any medical evidence in the record; the only evidence of a worsening condition is provided by Plaintiff's spouse and by Dr. Plattner's conclusion, and (3) Plaintiff's activities of daily living are incompatible with the claimed degree of impairment. (Tr. 22-23.)

The ALJ found that Plaintiff worked for several years with the same symptoms as those currently alleged; and he observed that working with an impairment supports a conclusion it is not disabling. (Tr. 23, *citing Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 601 (9th Cir. 1999.)) The ALJ is correct: the record reflects that when Plaintiff first saw Dr. Plattner in 1999 (four years before onset), he reported episodic disturbing recollections of his Vietnam experience, disturbed sleep, a startle response to loud noises, and said that he disliked crowds. Dr. Plattner opined that Plaintiff showed problems with concentration and focus during the exam. The VA assessed 70% disability. (Tr. 250-252.) Forms Plaintiff completed state that he worked from January of 1994 to June of 2003 delivering newspapers in Yakima, and earned $1,100 monthly. (Tr. 66.) From December of 1993 to December of 2000, Plaintiff operated his own lawn care business and earned $1,000 monthly. (Tr. 66.) Plaintiff delivered papers on two routes for another newspaper, the Daily Record, from November of 2000 through June of 2003. He earned $600 for one route and $1,900 for another. (Tr. 66.) The DIB insured status report lists Plaintiff's 2002 income as $8,479.00, which, as

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

the ALJ notes, is at or near SGA levels.[2] (Tr. 24, 63.) The ALJ is correct that Plaintiff's demonstrated ability to work with his alleged mental impairments supports a conclusion that the impairments are not disabling.

The ALJ found that although Plaintiff told Dr. Plattner his PTSD symptoms had worsened, there is nothing in the record to support this other than his spouse's statements and Dr. Plattner's conclusion. (Tr. 23.) The ALJ notes that despite Dr. Plattner's diagnosis of severe impairment in March of 2003, Plaintiff continued to work for three months after the exam and did not stop working or allege disability until June of 2003. (Tr. 20.) The ALJ properly relied on the lack of medical corroboration of a worsening condition, together with Plaintiff's history of working at or near SGA levels with the same symptoms, as weighing against Plaintiff's credibility, particularly his March 2003 statement to Dr. Plattner that his condition had worsened from 1999 to March of 2003. The ALJ also points out that in 2004, Plaintiff was referred for mental health treatment for his PTSD symptoms, but he refused treatment. (Tr. 21, citing Exhibit 9F at Tr. 236.) The ALJ is correct that the record does not support Plaintiff's claim or Dr. Plattner's opinion that Plaintiff's mental condition had worsened by March of 2003.

The ALJ considered Plaintiff's daily activities when he assessed credibility. He found that Plaintiff's activities show the ability to engage in physical activities, as well as the ability to concentrate, focus, and persist in order to follow directions. (Tr. 22.) The ALJ noted that Plaintiff is independent in his self-care,

_____

[2] See 20 C.F.R. § 416.974.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

has a full complement of independent living skills, performs routine maintenance on his residence, vehicles and small engines, drives (requiring a lot of concentration), has done heavy lifting, watches television, reads, plays games, visits friends, and goes out to dinner with his spouse.  (Tr. 21-22.) The ALJ is correct that Plaintiff's activities, as reflected in the record, are inconsistent with the degree of impairment alleged.

The ALJ properly took into account Plaintiff's credibility and his lack of a treating relationship with Dr. Plattner when he assessed the doctor's opinion. (Tr. 24.) Dr. Plattner was an examining, not a treating physician.   The record shows that he examined Plaintiff twice, about four years apart. The ALJ is correct that Dr. Plattner did not have an ongoing treatment relationship with Plaintiff, and correctly looked at the length of treatment as an appropriate factor to consider when weighing the doctor's opinion. (Tr. 20, 24-25.)

When the ALJ weighed the VA's assessment, perhaps most significant is that relevant facts were not known to the VA when they found Plaintiff disabled.  The ALJ points out that "even while classified as significantly vocationally limited by the VA the claimant was in fact earning substantial gainful activity." (Tr. 24.) Plaintiff told Dr. Plattner in 2003 that in the past year he earned $4,000. (Tr. 163.)  Dr. Plattner relied at least in part on this statement in assessing Plaintiff's occupational impairment, because he stated: "The veteran makes less money at this point as he gave up his yard work job and reports only making $4,000 last year. He indeed does have severe occupational impairment given the level of severity of his posttraumatic stress disorder  and associated

depressive difficulties." (Tr. 164.) However, as the ALJ points out, the record reflects that Plaintiff earned about $8,000, not $4,000, in 2002. (Tr. 23, 63, 361.)   The VA's disability determination appears to be based on Dr. Plattner's evaluation; the ALJ properly considered that Dr. Plattner's opinion was based, at least partially, on incorrect information.

The ALJ relied on plaintiff's ability to work, even after Dr. Plattner's 2003 assessment; Dr. Plattner's lack of a treating relationship; the incorrect information which partially formed the basis of Dr. Plattner's assessment, and the lack of medical and other evidence of impaired mental functioning, when he weighed the VA's determination.   (Tr. 25-26.)   All are persuasive, specific and valid reasons for the ALJ to give less weight to the VA's disability determination. *See McCartey v. Massanari*, 298 F.3d at 1076 (9th Cir. 2002).

### CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision that Plaintiff is capable of performing his past relevant work delivering newspapers is supported by substantial evidence and free of legal error.   Plaintiff is thus not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 15)** is **DENIED**.

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 17)** is **GRANTED**.

3.   The District Court Executive is directed to file this

1  Order, provide copies to counsel for Plaintiff and Defendant, enter

2  judgment in favor of Defendant, and **CLOSE** this file.

3        DATED February 21, 2007.

4

5                    ___S/ CYNTHIA IMBROGNO___
                     UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 18